## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VANESSA MCDONALD,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | |
| | : | **24-57** |
| | : | |
| **PHILADELPHIA HOUSING AUTHORITY,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2024, upon consideration of the City Defendants' Motion to Dismiss, it is **HEREBY ORDERED** that the Motion is **GRANTED.** Counts III and IV of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
NITZA I. QUIÑONES ALEJANDRO, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VANESSA MCDONALD**, *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | |
| | : | **24-57** |
| | : | |
| **PHILADELPHIA HOUSING AUTHORITY,** | : | |
| *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>CITY DEFENDANTS' MOTION TO DISMISS</u>
## <u>FOR FAILURE TO STATE A CLAIM</u>

Defendants City of Philadelphia and Nadine Fulton (collectively, the "City Defendants")
hereby file this Motion to Dismiss for Failure to State a Claim, pursuant to Federal Rule of Civil
Procedure 12(b)(6). In support of this Motion, the City Defendants incorporate the attached
Memorandum of Law. The City Defendants respectfully request that this Court dismiss Counts
III and IV of the Amended Complaint (ECF No. 25) with prejudice.

Respectfully submitted,

/s/ Adam R. Zurbriggen
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

*Attorney for Defendants City of*
*Philadelphia and Nadine Fulton*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VANESSA MCDONALD,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | |
| | : | **24-57** |
| | : | |
| **PHILADELPHIA HOUSING AUTHORITY,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This action arises out a deadly fire that occurred at a residential building owned by the Philadelphia Housing Authority.[1] Plaintiffs—the administrators of the estates of the building residents who died in the fire—have sued the Philadelphia Housing Authority and several of its employees. In addition, and relevant to this Motion, Plaintiffs have sued the City of Philadelphia and a social worker for the City's Department of Human Services, Nadine Fulton (collectively "the City Defendants"), alleging that they violated the decedents' due process rights by assuring them that they would replace their unit's smoke detectors and then failing to do so.

But even assuming this omission was made, it is not actionable under the Constitution. As the Supreme Court and the Third Circuit Court of Appeals have amply explained, the

---

[1] As the Court is likely aware, the issues raised by this action—and by this Motion specifically—are substantially similar to two others recently filed and currently before this Court. *See Woods, et al. v. Phila. Hous. Auth. et al.*, No. 24-cv-58-NIQA (E.D. Pa. filed Jan. 5, 2024); *Robinson, et al. v. Phila. Hous. Auth. et al.*, No. 24-cv-55-NIQA (E.D. Pa. filed Jan. 4, 2024). Accordingly, this Memorandum is substantially the same as those undersigned counsel has or will shortly file in the *Woods* and *Robinson* matters.

Constitution prevents abusive, arbitrary exercises of state power that harm individuals; it does not provide an affirmative right to protection from private harms such as a fire. Because Plaintiffs' allegations, even if true, do not establish a violation of the Due Process Clause of the Fourteenth Amendment, the City Defendants move to dismiss Plaintiffs' claims against them for failure to state a claim.

## I.  ALLEGATIONS AND CLAIMS SET OUT IN THE AMENDED COMPLAINT RELVANT TO THIS MOTION[2]

As alleged in the Amended Complaint, on January 5, 2022, a fire broke out at a residential building, owned by the Philadelphia Housing Authority and located at 869 N. 23rd Street in Philadelphia (hereafter "the Building"). *See* Am. Compl, ECF No. 25, at ¶¶ 64, 116, 121. The Building consisted of two units—Units A and B. *Id.* ¶ 65. Plaintiffs' decedents, who resided in Unit B, died in the fire. *Id.* ¶¶ 119, 121.

As alleged in the Amended Complaint, the City of Philadelphia's Department of Human Services ("DHS") is an agency of the City of Philadelphia that "exists, in part, to provide child welfare and juvenile services with a goal to provide and promote safety, permanency, and well-being for children." Am. Compl, ECF No. 25, at ¶ 95. Plaintiffs further allege that DHS, through its employees and agents, "inspected Unit B for safety, including but [not] limited to, the function and operability of its smoke detectors." *Id.* ¶ 96.

Plaintiffs allege that in or around December 2021, DHS received a report regarding one of the Plaintiffs' decedents—Shaniece Wayne, a child—missing a dental appointment. Am. Compl, ECF No. 25, at ¶ 98. After receiving this report, DHS allegedly "made two (2) safety visits to Unit B," meeting with the child's mother, Virginia Thomas. *Id.*

---

[2] The City Defendants assume the well-pled factual allegations of the Amended Complaint to be true only for purposes of this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), in which the truth of any well pled factual allegations must be assumed.

The first visit was allegedly conducted by a DHS social worker, Defendant Nadine Fulton (hereafter "Defendant Fulton"), on December 10, 2021. Am. Compl, ECF No. 25, at ¶¶ 98–99. During this visit, Defendant Fulton allegedly "noticed that the smoke detectors were inoperable and concluded that they were inoperable due to dead batteries." *Id.* ¶ 100. According to the Amended Complaint, the child's mother "stated she would purchase new batteries before Defendant Fulton's next visit." *Id.*[3]

The second visit was allegedly conducted by Defendant Fulton eleven days later—on December 21, 2021. Am. Compl., ECF No. 25, ¶ 102. During this visit, Defendant Fulton allegedly "noted that the smoke detectors were checked again and, although batteries were present, the devices were still inoperable." *Id.* Defendant Fulton then allegedly "affirmatively represented to the occupants of Unit B that she would obtain and return with working smoke detectors." *Id.* ¶ 104.

Nevertheless, according to the Amended Complaint, in the fifteen days between the second visit and the January 5, 2022, fire, "Defendant Fulton never brought the promised smoke detectors to Unit B, despite having affirmatively promised she would and despite knowing Unit B was overcrowded, filled with children, and without working smoke detectors." Am. Compl., ECF No. 25, ¶ 105. Plaintiffs allege that the occupants of Unit B "did not take action of replacing the inoperable smoke detectors" in the fifteen days preceding the fire, because they "justifiably relied on [Defendant] Fulton's promise to return with working smoke detectors." *Id.* ¶ 106.

---

[3] The Amended Complaint alleges that "Virginia McDonald" made this statement to Defendant Fulton, *see* Am. Compl. ¶ 100, but that appears to be a typo, given that a preceding paragraph refers to the child's mother as "Virginia Thomas," *id.* ¶ 98. But any discrepancy as to the name of the person who made the statement, if there is one, is not material to this motion.

Plaintiffs filed the operative four-count Amended Complaint in this matter on February 1, 2024. *See* ECF No. 25. The Amended Complaint names as Defendants the Philadelphia Housing Authority ("PHA"), a number of individual PHA employees, the City of Philadelphia, and Defendant Fulton. Relevant to this Motion by the City of Philadelphia and Defendant Fulton (hereafter, collectively the "City Defendants") are Counts III and IV. Count IV asserts a claim against both the City and Defendant Fulton under 42 U.S.C. § 1983, alleging that the City Defendants' alleged conduct in promising to replace smoke detectors affirmatively created a danger in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *See* Am. Compl., ECF No. 25, at ¶¶ 187–193. And Count III asserts a related municipal liability claim under § 1983 against the City only, contending that the City failed to promulgate certain policies or procedures, and/or failed to train its employees, resulting in the affirmative creation of a danger in violation of the substantive component of the Due Process Clause. *See id.* ¶¶ 182–186.

The City Defendants now move to dismiss the claims against them—Counts III and IV—in their entirety.

## II.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

III.   **ARGUMENT**

In this civil rights action under 42 U.S.C. § 1983, Plaintiffs contend that the City Defendants violated the decedents' constitutional rights under the substantive component of the Due Process Clause. Invoking a state-created danger theory of substantive due process liability, Plaintiffs maintain that the City Defendants violated the Constitution by promising to replace the inoperable smoke detectors in the Building in which decedents lived and then failing to do so in the weeks leading up to the fatal fire.

While Plaintiffs' loss is undoubtedly tragic, the alleged facts about the City Defendants do not amount to a violation of the Constitution, which generally prohibits abusive, arbitrary exercises of state power that harm individuals—not failures to provide protection from private harms such as a fire.

Plaintiffs' invocation of the state-created danger theory of substantive due process in order to avoid this general rule fails for two separate and independent reasons. First, the City Defendants in no way restrained the decedents' ability to protect themselves by replacing their own smoke detectors. Defendant Fulton, at most for Plaintiffs, merely assured the decedents she would replace the smoke detectors and then neglected to do so.  And under controlling Third Circuit precedent, such conduct does not constitute an actionable affirmative act amounting to a restraint of liberty.

Second, even if it constituted an actionable affirmative act, Defendant Fulton's conduct was not done with the requisite intent—a level of culpability that shocks the conscience. Instead, it was, at most, merely negligent.  Negligent conduct does not give rise to a substantive due process violation.

For these two reasons, Plaintiffs' claims against the City Defendants—both the individual state-created danger claim against Defendant Fulton, and the derivative municipal liability claim

5

against the City premised on the same alleged state-created danger—fail. Separately, but for the same reason, Plaintiffs' claim against Defendant Fulton is barred by qualified immunity. These issues are addressed in turn below.

### A. Plaintiffs Have Failed to Establish a Violation of Plaintiffs' Decedents' Substantive Due Process Rights Under a State-Created Danger Theory of Liability.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Because that "Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security," it "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

There are only two exceptions to *DeShaney's* rule that government has no general constitutional duty to protect its citizens from dangers posed by the world at large, such as building fires. First, under the "special relationship" exception, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200. Second and similarly, under the "state-created danger" theory of liability, a state actor may be liable "when it affirmatively places a person in a position of danger that the person would not otherwise have faced," through an affirmative act that "*amount[s] to a restraint of personal liberty* that is similar to incarceration or institutionalization." *Mears v. Connolly*, 24 F.4th 880, 883 (3d Cir. 2022) (internal quotation

marks and alterations omitted) (emphasis added) (quoting *Kamara v. Att'y Gen.*, 420 F.3d 202, 216 (3d Cir. 2005)).

Plaintiffs do not appear to contend that a "special relationship" existed between Plaintiffs' decedents and the State, such that the first exception applies and the City Defendants became generally responsible for their safety and well-being. Indeed, it is not alleged that Plaintiffs' decedents were incarcerated or otherwise held by the State against their will, such that a duty on the part of the government to protect them existed.

Instead, Plaintiffs contend that the City Defendants are liable under a state-created danger theory of liability. *See* Am. Compl., ECF No. 25, at ¶¶ 188–192. While that theory has never been recognized by the U.S. Supreme Court, it has been recognized by the U.S. Court of Appeals for the Third Circuit (as well as other circuits), which has required a plaintiff asserting such a claim to plead each of four elements: (1) "foreseeable and fairly direct harm;" (2) "action marked by a degree of culpability that shocks the conscience;" (3) "a relationship with the state making the plaintiff a foreseeable victim, rather than a member of the public in general;" and (4) "an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state not acted at all." *Johnson v. City of Phila.*, 975 F.3d 394, 400 (3d Cir. 2020) (internal quotation marks omitted) (quoting *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018)).

Here, and as explained further below, even assuming that the first and third elements are sufficiently pled, the allegations in the Amended Complaint do not suffice to establish the second and fourth elements. First, as to the fourth element, mere assurances or promises to provide aid, coupled with a failure to do so, do not amount to an affirmative use of state authority to create (or leave a person more vulnerable to) a danger *through a restraint of personal liberty*. And

second, as to the second element, the assurances and failures alleged here do not establish a level of culpability that shocks the conscience; at most, the conduct was negligent. Accordingly, for these two independent reasons, Plaintiffs' state-created danger claim must fail.

    *1.   Mere Promises or Assurances to Provide Aid or Protection Do Not Constitute an Affirmative Act for Purposes of a State-Created Danger Claim.*

In order to establish a state-created danger claim, a plaintiff must plead that the defendant "exercised [her] authority to *affirmatively act* in a way that created a danger to [the plaintiff] or rendered [the plaintiff] more vulnerable to danger." *Mears*, 24 F.4th at 884 (emphasis added) (original alterations and internal quotation marks omitted) (quoting *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007)). In other words, the plaintiff must "allege an *affirmative* act," because "an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger theory." *Johnson*, 975 F.3d at 400–401 (first emphasis added, second in original). And importantly here, the "affirmative act must amount to a *restraint of personal liberty that is similar to incarceration or institutionalization.*" *Mears*, 24 F.3d at 884 (emphasis added) (quoting *Ye*, 484 F.3d at 640–41). Finally, the affirmative act must have "created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all." *Ye*, 484 F.3d at 639.

Here—similar to many plaintiffs who have attempted to create liability on the part of a government actor for failing to act to protect a plaintiff from an existing danger—Plaintiffs contend that the City Defendants affirmatively acted to render the decedents more vulnerable to danger by "*promising* to return with operable smoke detectors to replace the inoperable smoke detectors," and then failing to do so in the 15 days leading up to the fire. Am. Compl., ECF No. 25, at ¶ 191 (emphasis added). But it is well established that mere assurances of aid, or expressions of intent to provide aid or protection from an existing danger, are not affirmative acts

that can give rise to state-created danger liability, because they do not restrain a person's liberty

to protect themselves. *See Mears*, 24 F.4th at 884 ("[A]ssurances and failures to warn are not

affirmative acts."); *see also Ye*, 484 F.3d at 640 ("We hold that a mere assurance cannot form the

basis of a state-created danger claim."); *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 284 (3d

Cir. 2006) (rejecting argument that government assurances to help—even where relied upon—

were sufficient to constitute an affirmative act, and explaining that, under *DeShaney*, "no

affirmative duty to protect arises from the State's expressions of intent to help an individual at

risk" (internal quotation marks and alterations omitted)); *Walter v. Pike Cnty., Pa.*, 544 F.3d 182,

194–95 (3d Cir. 2008) (holding that assurances of government protection are not affirmative

acts, as they "did not restrain the plaintiff from acting on his own behalf to obtain private

assistance" (citing *Ye*, 484 F.3d at 641)).[4]

      For example, in *Mears v. Connolly*, the plaintiff was assaulted by her son, who was

committed to a state-run psychiatric hospital. 24 F.4th at 882. The plaintiff sought to hold her

son's state psychologist liable under a state-created danger theory, alleging that the psychologist

assured her that it was safe to visit her son in the hospital, notwithstanding that the son had

severely beat another patient just days before the psychologist made that assurance. *Id.* at 882–

883. The district court dismissed the state-created-danger claim against the psychologist, and the

Third Circuit affirmed, explaining that "an affirmative act must amount to a restraint of personal

---

[4] The Amended Complaint also vaguely asserts that the City Defendants "*require[d]* and
allow[ed] Plaintiffs' Decedents to reasonably rely upon the representation that [Defendant]
Fulton would return with operable smoke detectors." Am. Compl., ECF No. 25, at ¶ 191(c)
(emphasis added). It is not clear what is meant by "required," but the Amended Complaint
contains no well pled allegations that the City Defendants somehow prohibited or otherwise
restrained Plaintiffs' decedents from replacing the smoke detectors themselves. All that is
alleged is decedents' reasonable reliance on Defendant Fulton's purported promise to replace the
smoke detectors in forgoing the opportunity to take action themselves.

liberty that is similar to incarceration or institutionalization," but the psychologist "did not rob [the mother] of her power to choose whether to visit. She was free to say no." *Id.* at 884. Here, like the assurances of safety that the psychologist made to the mother in *Mears*, the alleged assurances made to Plaintiffs' decedents that their smoke detectors would be replaced did not rob them of their power to replace those smoke detectors themselves—even if they reasonably relied on assurances of assistance in deciding not to take action themselves. Thus, the assurances and failure to deliver on those assurances cannot constitute the "affirmative act" and resultant liberty restraint that is required for a state-created danger claim.

*Mears* is but one of a line of cases so holding.  In *Ye v. United States*, the plaintiff was a patient who was seen by the defendant, a doctor at a government healthcare center, on complaints of shortness of breath and coughing. 484 F.3d at 635. The doctor assured the patient that "there is nothing to worry about and that [the patient] was fine," prescribing cough medicine and telling the patient to return in three months. *Id.* As it turned out, the doctor was wrong: the patient was suffering from congestive heart failure, and the delay in treatment caused the patient to suffer complications that would have been avoided had the doctor not made false assurances. *See id.* Nevertheless, the *Ye* Court concluded that the doctor could not be held liable under a state-created danger theory,[5] reversing the district court's denial of summary judgment to the

---

[5] The *Ye* Court observed, however, that the "assurances could, and almost certainly do, give rise to a state law medical malpractice claim." 484 F.3d at 642. This illustrates an important point— highlighted by the Third Circuit in *Johnson*—about state-created danger claims, such as this one, that stretch the limits of the theory past its breaking point: the tragic facts often presented by such claims may fit easily into other theories of liability, such as medical malpractice or common negligence, were it not for defenses such as sovereign immunity. But the fact that other theories of tort liability may be barred by such defenses is no reason to stretch the state-created danger theory—which is rooted, after all, in the Fourteenth Amendment of the U.S. Constitution, not the common law—beyond what the plain meaning of the Constitution will bear. *See Johnson*, 975 F.3d at 398 & n.3 (explaining that while the people "may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such

Case 2:24-cv-00057-NIQA   Document 31   Filed 02/15/24   Page 13 of 22

doctor. 484 F.3d at 640–43. As the Third Circuit explained, the doctor's assurances of safety were not an affirmative act amounting to a restraint of personal liberty. *See id.* 640–42. Relying on the Supreme Court's decision in *DeShaney*—in which the Supreme Court rejected liability for a state agency, despite the fact that the agency "specifically proclaimed, by word and deed, its intention to protect [the plaintiff] against [a specific] danger"[6]—the *Ye* Court concluded that "an assurance, in this case an expression of intent to help, is not an affirmative act sufficient to trigger constitutional obligations." *Id.* at 642. The same type of assurance—an expression of intent to help—is at issue here: Plaintiffs allege that the City Defendants expressed an intent to help the decedents by replacing their smoke detectors. But that expression of intent and failure to deliver on it do not alone constitute an affirmative act for purposes of a state-created danger claim, because ultimately the decedents remained free to replace the smoke detectors themselves.

An expression by a government official of his intent to provide aid—followed by a failure to deliver—was also at issue in *Bright v. Westmoreland County.* In *Bright*, a police officer assured a relative of a child victim of sexual molestation that "immediate action would be taken" against the molester. 443 F.3d at 279. But the officer did not immediately act, and in the next month the molester shot and killed the victim's sister to retaliate against the family for trying to prevent the molester from seeing the victim. *Id.* The sister's estate sued the officer, asserting a

---

as the present one[,] . . . the Constitution does not permit the courts to thrust that remedy upon them by an expansion of the Due Process Clause of the Fourteenth Amendment outside its ordinary meaning" (internal quotation marks omitted)); *id.* at 399 n.5 (noting that the state-created-danger doctrine is not a "rule of common law," and warning that treating it as such "deviates from the Constitution's careful balance of authority recognized in *DeShaney*").

[6] Again, the Supreme Court in *DeShaney* did not expressly approve of the state-created danger theory of liability. But the Third Circuit in *Ye* held that *DeShaney* compelled the result that assurances and expressions of intent to help are not affirmative acts for purposes of a state-created danger theory. 484 F.3d at 641.

state-created-danger claim, and arguing that the officer's "assurance that [the molester] would be taken into custody was relied upon by [the relative, the decedent's father] and resulted in [his] failing to protect [the decedent-sister]," *id.* at 283, by for example, "leaving the area with his family," *id.* at 284. The district court dismissed the claim and the Third Circuit affirmed, explaining that the officer's assurance of immediate action—and failure to deliver on that assurance—did not constitute an affirmative act amounting to a restraint of personal liberty. *Id.* Like the *Ye* Court, the Third Circuit in *Bright* relied on the Supreme Court's decision in *DeShaney*, explaining that *DeShaney* "spoke[] directly to th[e] matter" and held that "under these circumstances, no affirmative duty to protect arises from the State's *expressions of intent to help* an individual at risk." *Id.* (internal quotation marks omitted) (emphasis in original) (quoting *DeShaney*, 489 U.S. at 200).

In sum, the Third Circuit has repeatedly held that a government official's expression of intent to provide aid, or assurances that aid would be provided, do not constitute affirmative acts that satisfy the fourth element of a state-created danger claim—even if the plaintiffs reasonably relied on those expressions or assurances in forgoing efforts to help themselves—because ultimately the plaintiffs' personal liberty was not restrained. Here, however, assurances and failures to deliver are all that Plaintiffs plausibly plead: that Defendant Fulton assured the Building's residents that she would replace their inoperable smoke detectors with operable ones and then failed to do so for 15 days. *See* Am. Compl., ECF No. 25, ¶ 105. Even assuming the residents reasonably relied on that assurance in declining to replace the smoke detectors themselves, *id.* ¶ 106, that does not make the assurance an affirmative act: the decedents remained free to replace the smoke detectors themselves. Because Plaintiffs have not plausibly

alleged an affirmative act amounting to a restraint of personal liberty, their state-created danger claims must fail.

2. *Alternatively, the Amended Complaint Alleges No Conscience-Shocking Conduct.*

In the alternative, even had Plaintiffs adequately pled an affirmative act satisfying the fourth element of a state-created danger claim, Plaintiffs' state-created danger claims against the City Defendants still fail for the independent and alternative reason that the Amended Complaint does not satisfy the second element, as it does not allege conduct on the part of the City Defendants that rises to the required degree of culpability: conduct that shocks the conscience.

For purposes of the second element of a state-created danger claim—conduct that shocks the conscience—mere negligence is never enough. *See Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017). Rather, the conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). But while negligence is never enough, the precise level of culpability that shocks the conscience "varies with the state actor's opportunity to deliberate before taking action." *Kedra*, 876 F.3d at 437. "In hyperpressurized environments requiring a snap judgment, an official must actually intend to cause harm in order to be liable." *Id.* (internal quotation marks omitted) (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)). "In situations in which the state actor is required to act in a matter of hours or minutes, . . . the state actor [must] disregard a great risk of serious harm." *Kedra*, 876 F.3d at 437 (internal quotation marks omitted) (quoting *Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir. 2006)). "And where the actor has time to make an unhurried judgment, a plaintiff need only allege facts supporting an inference that the official acted with a mental state of deliberate indifference." *Kedra*, 876 F.3d at 437 (internal quotation marks omitted) (quoting *Sanford*, 456 F.3d at 309).

Here, even assuming that the conduct at issue—Defendant Fulton's alleged assurance that she would replace the decedents' smoke detectors, and her alleged failure to make good on that assurance over the course of the next two weeks—was made with sufficient time to be considered an "unhurried judgment," that conduct does not plausibly rise to the level of *deliberate* indifference for two reasons: (1) at most for Plaintiffs, the explanation for the relevant conduct was an oversight—which is merely negligence and not deliberate indifference; and (2) the risk of a deadly fire occurring within 15 days was not so high as to be obvious for purposes of deliberate indifference.

First, the Third Circuit has held that where the only reasonable inference to be drawn as to the reason for the defendant's conduct was that the defendant was merely negligent, a state-created danger claim premised on that conduct fails. *See, e.g.*, *Johnson*, 975 F.3d at 402. In *Johnson*, the Court considered a state created danger claim brought, like this case, by the estate of individuals who perished in a fire. *Id.* at 396–97. The estate sued an emergency operator who allegedly instructed the decedents to remain in the burning building to await rescue, and then failed to relay their presence in the building to firefighters, resulting in their not being rescued. *Id.* at 397. The Court held that the operator's failure to relay the decedents' presence to firefighters—even if an affirmative act[7]—did not amount to deliberate indifference, because the only reasonable explanation for the failure was the operator's negligence. *Id.* at 402. As the Court explained:

> [Plaintiff] does not allege that the Operator intentionally declined to relay the decedents' location to the firefighters. Instead, she argues the Operator failed inexplicably to inform the firefighters of the decedents' existence, location, or need of rescue. But the only

---

[7] The Court held that it need not decide whether this failure was an affirmative act when considered in conjunction with the operator's earlier instructions to the decedents to remain in the burning building because, in any event, the failure did not rise to the level of deliberate indifference. *See Johnson*, 975 F.3d at 402 n.11.

reasonable inference is that the Operator neglected to relay that information through error, omission, or oversight. Nothing in the complaint or, indeed, ordinary experience supports the inference that the Operator deliberately chose to discard her concern for the [decedents'] lives. For that reason, [Plaintiff's] claim against the Operator does not satisfy element two of the state-created danger theory.

*Id.* (internal quotation marks, alterations, and citations omitted).

The same is true here. Indeed, Plaintiffs do not plausibly allege that Defendant Fulton *intentionally decided* not to bring replacement smoke detectors, such that one could reasonably conclude that Defendant Fulton was deliberately indifferent to the risk of a fire. Plaintiffs do not allege *any* explanation for Defendant Fulton's alleged failure to bring replacement smoke detectors during the 15 days between her second visit (when she made the assurance) and the date of the fire. And ordinary experience dictates that a social worker who has said she will bring replacement smoke detectors would not simply decide not to out of indifference for the lives of the families whose welfare is her profession. At most for Plaintiffs, and giving them the benefit of every *reasonable* inference, Defendant Fulton simply neglected to bring the replacement smoke detectors within the 15-day time span at issue. And even if that is the case, it is at most negligence, and negligence does not suffice to establish conduct that shocks the conscience.

Second, even assuming a *deliberate* decision not to bring replacement smoke detectors in that 15-day time span, nothing in the Amended Complaint (apart, of course, from tragic hindsight) suggests a high likelihood that a fire would break out within that time span and that the lack of functioning smoke detectors would prove deadly. That there was *some* risk of a fire is not enough—the gravity of that risk must be so obvious that failing to act sooner could be considered deliberate indifference. *Compare L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016) (concluding that risk of harm in releasing a five-year-old child to an unverified adult was "'so obvious' as to rise to the level of deliberate indifference"), *with Sanford*, 456 F.3d at

15

311 (concluding that the "apparent gravity of the risk" of a child committing suicide did not rise to the level of deliberate indifference, even where the child stated he wanted to kill himself, where the child's family did not believe that he was actually at risk). And that simply is not the case here, where it is not even alleged that the decedents appreciated the risk of the 15-day wait for replacement smoke detectors. It is not alleged, for example, that the decedents ever took any action themselves acknowledging the risk, such as contacting Defendant Fulton to inquire as to the replacement smoke detectors in the days after the second visit.

In sum, as the Court explained in *Sanford*, the "relevant question" for purposes of deliberate indifference is not what the government official "*should have*" done, it is whether what the government official *did do* shocks the conscience. 456 F.3d at 311. While it may be— particularly in hindsight—that the smoke detectors *should have* been replaced more quickly than in 15 days, that failure cannot be said to shock the conscience; at most it is negligent. Accordingly, even if Plaintiffs have plausibly alleged an affirmative act (which they have not), they have also failed to allege conduct that shocks the conscience, and their state-created danger claims against the City Defendants also fail for this independent reason.

**B.** **Because Plaintiffs Cannot Establish that Decedents' Substantive Due Process Rights Were Violated Under a State-Created Danger Theory, Plaintiffs' Municipal Liability Claim Premised on Such Violation Also Fails.**

As set out in Part III.A, above, the Amended Complaint does not sufficiently plead a violation of Plaintiffs' decedents' substantive due process rights. And where a plaintiff does not establish that he or she suffered a violation of his or her constitutional rights, a municipal liability claim under 42 U.S.C. § 1983 must fail. *See, e.g.*, *Johnson v. City of Phila.*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (dismissing municipal liability claim premised on a state-created danger theory, where the court concluded that no substantive due process violation had occurred

because the alleged conduct was merely negligent, and explaining that "there must . . . be a violation of the plaintiff's constitutional rights" for a municipal liability claim to proceed (internal quotation marks omitted)); *see also Brown v. Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst.,* 318 F.3d 473, 482–83 (3d Cir. 2003) (same, explaining that "[t]here ha[d] been no constitutional harm alleged"). Accordingly, Plaintiffs' municipal liability claim against the City premised on a state-created danger theory—Count III—fails to state a claim as well.

### C.  <u>Defendant Fulton is Entitled to Qualified Immunity In Any Event</u>

Qualified immunity shields public officials from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 579 (3d Cir. 2013). A right only qualifies as clearly established if its "contours . . . are sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted). And importantly, a right must be clearly established "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12–14 (2015) (further instructing federal courts considering a qualified immunity defense to consider "whether the violative nature of the *particular* conduct is clearly established"). "For qualified-immunity purposes, clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals." *James v. N.J. State Pol.*, 857 F.3d 165, 170 (3d Cir. 2020).

Here, for the reasons set out above in Part III.A, the Amended Complaint does not state a claim that Defendant Fulton violated Plaintiffs' decedents' substantive due process rights. And

for that reason alone, Defendant Fulton is entitled to qualified immunity. *See, e.g.*, *Ye v. United States*, 484 F.3d 634, 638, 643 & n.6 (3d Cir. 2007) (holding that government doctor was entitled to qualified immunity on state-created danger claim where such claim failed for lack of an actionable affirmative act). But even if Defendant Fulton's actions did violate the decedents' substantive due process rights, the claim would still be barred as to Defendant Fulton on the basis of qualified immunity, as there is no "binding Supreme Court and Third Circuit precedent" or "a robust consensus of cases of persuasive authority in the Courts of Appeals" that establish— "beyond debate"—that Defendant Fulton's conduct violated substantive due process. *James*, 857 F.3d at 170. On the contrary, and as set out above, precedential cases from the Third Circuit establish that Defendant Fulton's conduct neither constituted an affirmative act, nor shocks the conscience, for purposes of the fourth and second elements, respectively, of a state-created danger claim. Accordingly, Defendant Fulton is entitled to qualified immunity on Plaintiffs' state-created-danger claim.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court should dismiss with prejudice Counts III and IV of the Amended Complaint.

Respectfully submitted,

/s/ Adam R. Zurbriggen
Date: February 15, 2024                     Adam R. Zurbriggen
                                            Deputy City Solicitor
                                            Pa. Attorney ID No. 331169
                                            City of Philadelphia Law Department
                                            1515 Arch Street, 14th Floor
                                            Philadelphia, PA 19102
                                            215-683-5114 (Phone)
                                            215-683-5397 (Fax)
                                            adam.zurbriggen@phila.gov

*Attorney for Defendants City of*
*Philadelphia and Nadine Fulton*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VANESSA MCDONALD,** *et al.,* | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | |
| | : | **24-57** |
| | : | |
| **PHILADELPHIA HOUSING AUTHORITY,** *et al.,* | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the foregoing Motion to Dismiss was filed via the

Court's electronic filing system and is available for viewing and downloading.

/s/ *Adam R. Zurbriggen*
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

Date: February 15, 2024